Pamela L. Kingsley, State Bar No. 004226

**TB TIFFANY & BOSCO** P.A.

SEVENTH FLOOR CAMELBACK ESPLANADE II
2525 EAST CAMELBACK ROAD
PHOENIX, ARIZONA 85016-9239
TELEPHONE: (602) 255-6015
FACSIMILE:   (602) 255-0103
E-MAIL:  plk@tblaw.com

Attorneys for Plaintiff, Vandon Jenerette

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Vandon Jenerette,<br><br>                    Plaintiff,<br><br>        v.<br><br>Aesculap, Inc.,<br><br>                    Defendant. | Case No.<br><br>**COMPLAINT**<br><br>**(Jury Trial Demanded)** |

Plaintiff Vandon Jenerette, by his attorneys, Tiffany & Bosco, P.A., for his Complaint against Defendant Aesculap, Inc., states and alleges as follows:

## NATURE OF THE ACTION

This action is brought for discrimination in employment pursuant to the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12111, et seq., and for retaliation pursuant to 42 U.S.C. § 12203.  The goal is to correct unlawful disability discrimination and retaliation as allowed by the employment practices of Defendant Aesculap, and to provide appropriate relief in the form of compensatory and punitive damages, attorneys' fees, and costs to Plaintiff Vandon Jenerette, who was and still is adversely affected by such practices.

As alleged with greater specificity below, Vandon Jenerette was subjected to disability discrimination and retaliation by his direct supervisor, Timothy Lufkin. Having informed Aesculap of his mental and emotional disability, Aesculap deemed Vandon Jenerette qualified for and so granted him FMLA leave and short-term disability. While Vandon Jenerette was lawfully absent from work, Aesculap terminated his employment. Aesculap used as a pretext for its wrongful conduct unsubstantiated allegations and publicity, both of which were blatantly false, and would have been shown false had Aesculap conducted an unbiased investigation – starting with interviewing Vandon.

**JURISDICTION AND VENUE**

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, 42 U.S.C. § 2000e, et seq.; the Civil Rights Act of 1991, 42 U.S.C. § 1981a, 42 USC § 12101, et seq.; and 42 USC § 12203.

2. Defendant Aesculap, Inc., by virtue of its own acts and omissions or by virtue of the acts and omissions committed by one or more of its agents, employees, or representatives, as described herein, has conducted business or caused events to occur within the District of Arizona and, more particularly, within Maricopa County, Arizona, as more particularly described herein, so as to give rise to both subject matter and personal jurisdiction of this Court.

3. Defendant Aesculap, Inc. regularly conducts business in this District, and all or most of the events giving rise to this action, and the acts complained of herein took place within, Maricopa County, Arizona. Venue of this action lies in this Court pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. 2000e-5(f)(3) because the unlawful employment practices giving rise to Plaintiff Vandon Jenerette's claims occurred in this District.

4. Plaintiff Vandon Jenerette has fully complied with all prerequisites to jurisdiction in this Court under Title VII.

## PARTIES

5. Plaintiff Vandon Jenerette ("Vandon") is a married man residing in Maricopa County, Arizona.

6. Defendant Aesculap, Inc. ("Aesculap") is a part of the B. Braun Medical Group of Companies, and is, upon information and belief, a foreign corporation with over 500 employees, and regularly conducts business in Arizona, purposefully availing itself of the economic benefits and legal protections of Arizona.

## STATEMENT OF CLAIM

7. The discriminatory conduct of Aesculap of which Vandon complains in this action includes the failure to accommodate Vandon's disability, retaliation, and the wrongful termination of Vandon's employment.

## FACTUAL ALLEGATIONS

8. According to its website, a century ago, the progenitors of Aesculap were "medical device toolmakers, recognized as elite craftsmen whose precision, dedication and expertise in surgical equipment was infused into every surgical instrument [they] produced." Today, it places its new instruments, innovative implants, and products in the hands of surgeons, thereby "changing patients' lives every single day."

9. Vandon worked for Aesculap beginning on March 31, 2005, through April 17, 2017, when his employment was wrongfully terminated. Throughout, Vandon had a history of high performance, being hand picked and promoted to multiple positions because of his high performance, loyalty, and contributions to the company across multiple departments.

10. Vandon started as a Senior Sales Representative, and was then entrusted with and promoted to Training Manager. Ten years in, Aesculap promoted him to Regional Sales Director. From 2006 up to the termination of Vandon's employment, he was the

recipient of multiple sales awards, accolades, and incentive payments, even within the weeks leading up to the termination of his employment.

11. Vandon finished 107% to quota for sales in 2015. That he was far from an average worker is shown by the fact that even when he began experiencing Major Depression and PTSD in 2016, he finished 106% to quota for sales for that year. On March 3, 2017, he was given a Merit Increase due to his continued high performance and contributions to Aesculap. Vandon's last Sales Performance Evaluation (which was completed prior to the termination of his employment) and scheduled for review by April 21, 2017, will confirm he both met and exceeded company objectives and standards.

12. Additionally, in the months and weeks prior to the termination of Vandon's employment, there were absolutely no indications or evidence of any pending disciplinary or corrective actions that would have suggested his performance and employment status were in question.

13. In April 2015, Timothy Lufkin became Vandon's immediate supervisor. Supervisor Lufkin continued as his supervisor when Vandon became Neuro Regional Sales Director in September 2015.

14. At least once after becoming Vandon's supervisor, Mr. Lufkin responded to an innocuous situation with Vandon with harassment, intimidation, and verbal abuse, which Vandon reported to Aesculap Human Resources.

15. At the end of October 2016, Vandon experienced multiple traumatic events in his personal life, which led to the onset of Major Depression, PTSD, and, ultimately, his disability.

16. Vandon took emergency leave from October 31, 2016 through November 4, 2016, to begin to deal with the traumatic events in his personal life.

17. Upon Vandon's return to work on November 7, 2016, his supervisor, Mr. Lufkin, called Vandon and severely reprimanded him for having missed a meeting that had been held November 2nd and 3rd.

18. During that 10-minute-long phone conversation, Mr. Lufkin expressed his suspicions of Vandon's need to take emergency leave and demanded details about the nature of the traumatic events in his personal life.

19. Although he did not want to divulge the nature or details of the underlying events or the symptoms he was experiencing as a result, Vandon felt his supervisor was threatening his employment and so Vandon provided the informed demanded by Mr. Lufkin.

20. After unwillingly providing Mr. Lufkin full disclosure, Vandon was hopeful that at least, it would lead to a better understanding by Mr. Lufkin of the serious nature of his mental and emotional state and engender Mr. Lufkin's support for the future.

21. On an objective level, a reasonable manager, especially one who was employed by a company in the medical field, would have been put on notice Vandon was in crisis and needed help, not a reprimand and interrogation.

22. On a subjective level, Vandon had a reasonable expectation that his supervisor for over 18 months would have respected Vandon's privacy as to the details of why he needed the leave and then sought to help Vandon in any way he could within company guidelines.

23. Instead, Mr. Lufkin seemed to double down. Vandon soon realized that not only did Mr. Lufkin seem to be woefully insensitive to the traumatic events in Vandon's personal life, but Mr. Lufkin acted as though he was ignorant of Vandon's emotional and mental state and possible disability or potential for it.

24. Mr. Lufkin's message was clear. Vandon could not ask for leave regardless of his emotional and mental health.

25. If it had not existed before, Mr. Lufkin created a hostile work environment for Vandon over the course of the next several months by making demeaning, harassing, and verbally abusive comments. To make his point that Vandon dare not miss any work, he directed Vandon to increase his work-related travel. The increased travel limited Vandon's ability to seek and engage in routine health care to address his emotional and mental health.

26. Through the end of 2016 and into the first several months of 2017, Vandon's symptoms of Major Depression and PTSD worsened. His disability began to manifest itself in both his personal life and at work. Nevertheless, based upon Mr. Lufkin's reprimand in November 2016, and other demeanor, Vandon understood he could not ask for leave regardless of the state of his emotional and mental health without risking his job.

27. By the end of March 2017, Vandon's disability had fully manifested itself in both his personal and professional lives.

28. On or about March 24, 2017, Vandon engaged Aesculap in the interactive process by calling Mrs. Christina MacDougall, Aesculap's Human Resources Representative. He could not turn to Mr. Lufkin as he feared another reprimand and increased retaliation. Vandon informed Mrs. MacDougall that he was experiencing mental health issues, including depression, and they were severely negatively impacting his ability to perform both work and normal life activities.

29. During his telephone conversation with Mrs. MacDougall, Vandon informed her of his desire to take medical leave, thereby requesting a reasonable accommodation.

30. Recognizing Vandon's request as one for an accommodation based on his mental health, Mrs. MacDougall directed Vandon to contact Matrix Absence Management ("Matrix"), Aesculap's Short-Term Disability Plan Claims Administrator, and stated Matrix would manage his medical leave and disability claim.

31. Aesculap, with Matrix acting on its behalf, processed Vandon's intake on March 24, 2017.

32. Mrs. MacDougall also shared with Vandon that, to avoid the complete loss of income, Vandon could take advantage of Aesculap's short-term disability benefits while on medical leave.

33. Mrs. MacDougall also confirmed Vandon could supplement his short-term disability benefits with his Paid Time Off balance to make his pay "whole" while on medical leave.

34. Again, fearing another reprimand and retaliation from Mr. Lufkin for taking leave, Vandon asked Mrs. MacDougall if he needed to inform Mr. Lufkin of his request for medical leave or if she would talk with him. Mrs. MacDougall stated she would discuss his request with Mr. Lufkin.

35. After speaking with Mrs. MacDougall, at 10:36 AM on March 27, 2017, Mr. Lufkin called Vandon to discuss his medical leave. The conversation lasted 18 minutes. During that conversation, Mr. Lufkin recited that he had never had one of his managers take medical leave.

36. Although on April 13, 2017, Aesculap provided Vandon with a letter approving his medical leave under the FMLA for the period of April 4 through April 21, 2017, Vandon believes and alleges that Mr. Lufkin was opposed to the leave and intended to do what he could to avoid or end it. Vandon further believes, and therefore alleges, Mr. Lufkin wanted to stop having to deal with Vandon's disabilities and absences by not having Vandon return to his position after his leave ended. Vandon further believes, and therefore alleges, Mr. Lufkin let his position be known to Aesculap either immediately or when the opportunity described below presented itself.

37. On or about April 14, 2017, Aesculap learned of publicity surrounding Vandon's arrest for misdemeanor charges. Already informed that Vandon's mental disability had required his taking leave, Aesculap knew or should have known that the matters of which Vandon was being accused were consistent with the reasons for his having

-7-

sought his accommodation based on disability.  Abnormal and impaired decision-making processes have been observed in patients with major depressive disorder and PTSD. Aesculap knew or should have known that Vandon would need further accommodation to deal with the many issues he was facing.

38. Instead of taking reasonable non-discriminatory steps, including reaching out to its faithful employee of twelve years and asking whether Vandon could use any assistance, Aesculap exploited the opportunity and used the circumstances of the arrest as a pretext for the terminating Vandon's employment.

39. On April 17, 2017, while Vandon was still on medical leave, Aesculap terminated Vandon's employment.  It did so via an email message received by Vandon while he was enjoying the benefits provided by law in the form of the supposed reasonable accommodation that had been provided him.  Had Vandon known of the possibility that his employment was at risk, he would have contacted Aesculap before termination to engage in an interactive process to reach a reasonable accommodation moving forward.

40. The termination of Vandon's employment was supposedly "… for legitimate business reasons including a pattern of poor judgment as well as the impact on the reputation of the organization." Unquestionably, the alleged legitimate business reasons given were vague and, because Aesculap provided no further details to support its ambiguous reasoning.

41. By short-circuiting the process, Aesculap intentionally denied Vandon the opportunity to ask for, much less have the parties engage in, an interactive process before the wrongful termination.  The quick, unilateral firing not only prevented Vandon from engaging in a good faith, real time, two-way conversation with the three individuals who were deciding the fate of his employment status:  Mr. Lufkin, a Senior VP, and the Director of Human Resources, but allowed Aesculap to avoid a good faith interactive process altogether.

42. After the firing, Aesculap denied multiple requests from Vandon to discuss, in good faith, how the termination of his employment had been made in a vacuum, without Vandon's being able contribute to the manner in which he could continue performing the essential functions of his job. When fired, Vandon was using the accommodation Aesculap had offered (short-term disability). With the termination, that accommodation evaporated without any interactive process or hope for any substitute. In denying Vandon the opportunity to meet, not only did Aesculap fail a second time to engage in a good faith interactive process, it refused to do so.

43. Rather than terminating Vandon's employment for a "pattern of poor judgement," Aesculap, in fact, terminated it because of Vandon's disability and in retaliation for his having availed himself of a lawful accommodation.

44. Matrix, acting on the behalf of Aesculap, conducted a thorough and independent review of Vandon's clinical condition to include documents and interviews with Vandon's treating health care providers. The reviewers, Dr. Eric M. Chavez, MD – Psychiatrist, and Dr. Jeremy B. Hertza, PsyD, supported the findings of psychiatric and functional impairments from April 4, 2017 to June 26, 2017.

45. Aesculap's alleged legitimate business reasons are pretextual as evidenced by:
    a. The temporal proximity of Aesculap's adverse employment action to Vandon's protected activity.
    b. Aesculap offered several misleading and false statements to the EEOC in both Respondent's Position Statement and the reply to the EEOC Investigator's Request for Additional Information.
        i. Aesculap egregiously claimed Vandon "never requested nor was he denied a reasonable accommodation" and Aesculap "did not even know that Charging Party was disabled." Undeniably, Aesculap engaged in the interactive process with Vandon in March 2017, and implemented an accommodation by directing

|   |   |   |
|---|---|---|
|   |   | him to contact and work with its short-term disability plan administrator, and offering to supplement his short-term disability insurance payments with his Paid Time Off balance. |
|   | ii. | Aesculap also claims it substantiated allegations made against Vandon by a subordinate. But in Aesculap's letter to Vandon dated August 15, 2016 regarding the allegations, Aesculap states: (1) "We were unable to corroborate the allegations regarding the Data Access issues," (2) "We were not able to make any findings the allegations related to Management were based on any unlawful conduct," and (with regard to Private Personnel Information), and (3) "We have not been able to locate any data indicating that you requested information outside of typical scope during the on-boarding process." Thus, none of the subordinate's allegations was substantiated. |
| c. | | Aesculap alleges Vandon violated the company Workplace Violence Policy; yet, it failed to investigate the conduct in question and failed to follow company policy, which states, "All reports made to Human Resources will be investigated" and "Aesculap will take further appropriate action once the report has been thoroughly investigated." |
| d. | | Upon learning of Vandon's claims of disability discrimination and retaliation in May 2017, Aesculap also failed to investigate his complaint and failed to follow company policy which states, "The Company using qualified personnel will promptly and objectively conduct an investigation of all complaints which provides all parties appropriate due process and reaches reasonable conclusions based on the evidence collected. The investigation will typically include interviews with the complaining party, the alleged harasser and |

potential witnesses who can offer relevant information about the complaint."

46. The Phoenix Municipal Court Veterans Court found the behaviors that led to Vandon's arrest stemmed from his conditions of Major Depression and PTSD.

47. The Phoenix Municipal Court Veterans Court dismissed all charges against Vandon resulting from his arrest. In spite of the publicity of his arrest on April 11, 2017, to this day, Vandon's innocence remains unchallenged.

48. In discriminating against Vandon, Aesculap acted with conscious disregard (either with malice or with reckless indifference) for Vandon's rights and is liable under 42 U.S.C. § 1981a for punitive damages in the amount necessary to punish Aesculap for its discrimination and to dissuade those similarly situated from other like future conduct.

**EXHAUSTION OF FEDERAL ADMINISTRATIVE REMEDIES**

49. Vandon filed a charge with the Equal Employment Opportunity Commission with respect to the claims asserted herein on January 16, 2018.

50. The Equal Employment Opportunity Commission issued a Notice of Right to Sue letter, dated February 1, 2019, which Vandon received on February 5, 2019. A copy of the Notice of the Right to Sue is attached as Exhibit 1.

**DAMAGES**

51. As a direct and proximate result of the breach of Vandon's rights, Vandon sustained and continues to sustain economic and non-economic injuries, including, but not limited to, loss of income – back and front pay, benefits, emotional pain and distress, future pecuniary losses, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, and is entitled to compensatory and punitive damages for the harm created by Aesculap's unlawful acts.

. . .

. . .

**PRAYER FOR RELIEF**

WHEREFORE, Vandon respectfully requests that judgment be entered in his favor against Defendant Aesculap:

A. Declaring that Aesculap has violated Title VII of the Civil Rights Act of 1964, as amended;

B. Directing Aesculap to take such affirmative action as is necessary to ensure that the effects of its unlawful employment practices are eliminated and do not continue to affect the employment or employment opportunities of Vandon and others;

C. Providing Vandon with compensation and benefits he otherwise would have enjoyed through employment;

D. Awarding Vandon compensation for lost and future wages and benefits, including pre-judgment and post-judgment interest;

E. Awarding Vandon all economic and non-economic damages;

F. Awarding Vandon special damages to be proven at trial;

G. Awarding Vandon punitive or exemplary damages to be proven at trial;

H. Awarding Vandon pre-judgment and post-judgment interest;

I. Awarding Vandon attorneys' fees and costs; and

J. Directing such other and further relief as the Court deems just and proper.

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

**DEMAND FOR JURY TRIAL**

Vandon hereby requests that, upon trial of this action, all issues be submitted to and determined by a jury except those issues expressly reserved by law for determination by the Court.

RESPECTFULLY SUBMITTED this 3rd day of May, 2019.

TIFFANY & BOSCO, P.A.


By:   /s/ Pamela L. Kingsley
        Pamela L. Kingsley
        Seventh Floor Camelback Esplanade II
        2525 East Camelback Road
        Phoenix, Arizona 85016-4229
        *Attorneys for Plaintiff, Vandon Jenerette*

4I9063603